OPINION
Defendant-appellant Johnny Blue appeals the May 17, 1999 Judgment Entry of the Stark County Court of Common Pleas which memorialized a jury verdict of guilty on one count of possession of cocaine and sentenced appellant accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On March 1, 1999, appellant went to Summer Jenkins' residence to buy crack cocaine. T. at 147. Shortly thereafter, and while appellant was in the residence, the Canton Vice Unit and Swat Team entered the residence and found appellant in possession of crack cocaine. The Canton Police and Swat Team were in the process of executing a search warrant for drugs on the residence of Ms. Jenkins. In so doing, the police used a battering ram to make an unannounced entrance into Ms. Jenkins' residence. Officer Terry George was the first officer to enter the residence, the point man. Officer Eric Stanbro was the cover officer, entering the residence just behind Officer George. At trial, Officer Stanbro testified he saw Officer George push appellant to the ground. As appellant was going down to the ground, Officer Stanbro saw him throw a plastic bag off to the right from his right hand. T. at 109-110. The police retrieved this plastic bag, sent it to the crime lab, and determined it contained 2.9 grams of crack cocaine. Appellant also testified at trial. Appellant explained he went to the Jenkins residence to purchase crack cocaine. However, appellant maintains the police broke down the door before he had even taken the money out of his wallet. Appellant denied of ever having possession of the crack cocaine. T. at 148-149. Appellant testified he purchased drugs from Ms. Jenkins several times but never the large quantity found in the baggy. On March 10, 1999, appellant was indicted with one count of possession of crack cocaine in violation of R.C. 2925.11(A). The matter proceeded to a jury trial on May 11, 1999. After hearing all of the evidence, the jury returned with a guilty verdict on the sole count of the indictment on the same day. In a May 17, 1999 Judgment Entry, the trial court memorialized the jury verdict of guilty and sentenced appellant to sixteen months incarceration. It is from this judgment entry appellant prosecutes this appeal, assigning as error the following:
 I. DEFENDANT'S CONVICTION ON ONE COUNT OF POSSESSION OF COCAINE, A FELONY OF THE FOURTH DEGREE, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. TRIAL COUNSEL FOR DEFENDANT WAS INEFFECTIVE IN FAILING TO ACCURATELY REFLECT THE DEFENDANT'S VIEW ON THE DISMISSAL OF A POTENTIAL JUROR DURING THE VOIR DIRE PROCESS.
 I
In his first assignment of error, appellant maintains his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. R.C.2925.11(A) provides "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.01(K) defines possession or possess as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Further, R.C. 2901.21(C) states "(1) possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for sufficient time to have ended his possession." Appellant testified he went to the Jenkins residence with the purpose of buying crack cocaine. At trial, Officer Stanbro stated he saw appellant throw a plastic bag to the right as Officer George was pushing him to the ground. Further, as Officer Stanbro handcuffed appellant, he saw the plastic bag lying to the right of appellant. T. at 114. The police retrieved the plastic bag and after scientific analysis, determined the bag contained crack cocaine. This evidence, if believed, provided the jury with ample, competent credible evidence upon which to base its decision. Further, because this same evidence establishes appellant knowingly possessed a controlled substance. Accordingly, we find the evidence is also sufficient to support appellant's conviction for possession of crack cocaine. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains he was denied effective assistance of trial counsel. Specifically, appellant argues trial counsel failed to accurately reflect his "views" on the dismissal of a potential juror during the voir dire process. We disagree. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136
. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545,558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. Accordingly, we will direct our attention to the second prong of the Strickland test. During the voir dire process, Juror No. 260 asked to speak to the court outside of the hearing of the venire. At that time, the following exchange took place:
 JUROR NO. 260: It's just I feel that I am not able to give a fair —
THE COURT: Is there a reason for that feeling?
 JUROR NO. 260: Yes. I stated that on my questionnaire.
* * *
THE COURT: When did that occur?
 JUROR NO. 260: It's been about four or five years ago. Still there.
THE COURT: He was convicted in Stark County?
JUROR NO. 260: Yes.
 THE COURT: Did he plead to the case or did he go to trial?
 JUROR NO. 260: The first time went to trial. The second time he plead.
 THE COURT: Do you remember who the sentencing judge was?
* * *
 It was not me because I was not here then. You seem very emotional about it now.
JUROR NO. 260: Yes. I asked to be excused.
THE COURT: Because of that?
JUROR NO. Yes.
 THE COURT: How is that going to affect your ability to sit and listen? You have to give me a little bit of how you are feeling.
 JUROR NO. 260: Well, being as I heard this young man is for a drug abuse and my son was the same, I just feel I wouldn't be able to be fair.
 THE COURT: Fair to whom, the State of Ohio or fair to the defendant?
 JUROR NO. 260: The State of Ohio — both, I guess. I understand that we have laws and we have to abide by them, but I just feel I wouldn't be fair.
THE COURT: Just too emotional?
JUROR NO. 260: Yes.
 THE COURT: I am going to have you go ahead and take a seat. Let me talk to the lawyers for a minute.
(Thereupon, Juror No. 260 stepped back.).
THE COURT: Do you wish her to stay or not to stay?
 [APPELLANT'S TRIAL COUNSEL]: No objection, Your Honor, on behalf of Johnny Blue. And I would recognize for the record this is an African American female, but based upon her questionnaire and how she demonstrated to us, having been called to jury service four previous times, I think Johnny Blue has authorized me to indicate that we have no objection.
[PROSECUTOR]: Obviously, none from the State.
We note the record is devoid of any evidence demonstrating appellant expressed to counsel his disapproval of counsel's decision not to object to the trial court's excusing Juror No. 260. Notwithstanding this lack of record evidence, we find appellant fails to demonstrate prejudice under the second prong of the Strickland test. Specifically, the record does not demonstrate the outcome of the trial would have been different had Juror No. 260 been seated as a juror.
For this reason, appellant's second assignment of error is overruled. The May 17, 1999 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: HOFFMAN, J. GWIN, P.J. and EDWARDS, J. concur.